FEDERAL DEPOSIT INSURANCE COR-
PORATION as receiver for Silverado
Banking, Savings and Loan Associa-
tion, a Colorado savings and loan asso-
ciation, Plaintiff–Appellant,

v.

WELLS PLAZA LIMITED PARTNER-
SHIP, an Arkansas limited partnership,
and Sterling Group Co., a Colorado
general partnership, Defendants–Appel-
lees.

No. 90CA1993.

Colorado Court of Appeals,
Div. II.

Jan. 16, 1992.

———

Kutak, Rock & Campbell, John H. Bern-
stein, Tana K. Simard, Denver, for plain-
tiff-appellant.

Daniel T. Moyle, Jr., P.C., Daniel T.
Moyle, Wheat Ridge, for defendants-appel-
lees.

Opinion by Judge ROTHENBERG.

Plaintiff, Federal Deposit Insurance Cor-
poration (FDIC) as receiver for Silverado
Banking, Savings and Loan Association
(Silverado Banking), appeals the trial
court's order denying its motion to show
cause. We reverse and remand with di-
rections.

In October 1984, Silverado Banking
loaned defendant Wells Plaza Limited Part-
nership $3,360,000 to purchase and finance
a shopping center. In return, Wells Plaza
executed a non-recourse promissory note to
Silverado Banking secured by a deed of
trust and an assignment of rents and leas-
es. Under the terms of the note, Silverado
Banking agreed not to look to the partners
individually for satisfaction of the loan but
to look only to the property securing the
loan.

In 1985, Wells Plaza reorganized and
changed its general partners to Asset
Management Group Investment Corpora-
tion, Earl L. Wright, and Michael D. Berg-
mann.

Also in 1985, Wells Plaza began to expe-
rience financial difficulties, and, to avoid
default, the parties agreed to modify the
payment rate under the note. Silverado
Banking agreed to allow Wells Plaza to

make monthly payments in an amount equal to the shopping center's net operating income. Thus, from March 1986 through June 1987, Wells Plaza paid and Silverado Banking accepted the net operating income as payments. In June 1987, the partners agreed to modify the note permanently to allow Wells Plaza to pay net income payments.

From March 1988 through May 1988, Wells Plaza failed to make any payment to Silverado Banking, and, as a result, Silverado Banking filed a complaint for the appointment of a receiver based on Wells Plaza's default. In June 1988, the court appointed Federal Savings and Loan Insurance Company (predecessor to FDIC) as receiver. Federal Savings then filed an amended complaint against Wells Plaza and Sterling Group Company for breach of the note and for equitable relief.

Federal Savings served Michael Bergmann *as agent* for Wells Plaza; however, it did not serve any of the partners individually or name them as defendants in the complaint. Sterling Group Company was subsequently dismissed from the action.

After Federal Savings was appointed receiver, it took no action to prevent Wells Plaza from disbursing its funds to other creditors, and between February and July 1989, Wells Plaza distributed approximately $90,000 to two of its other creditors, leaving only $530 in its account.

After a bench trial in September 1989, judgment for $87,094 was entered in favor of Federal Savings and against Wells Plaza based on a theory of unjust enrichment. The judgment did not relate to the note. This court affirmed the trial court's judgment in *Federal Savings & Loan Insurance Corp. v. Wells Plaza Limited Partnership,* (Colo.App. No. 89CA2138, Nov. 15, 1990) (not selected for official publication).

As a result of Wells Plaza's previous payments to its other two creditors, Federal Savings was unable to collect on its judgment. FDIC as successor to Federal Savings then filed a post-trial motion for judgment against general partners of the judgment debtor and, pursuant to C.R.C.P.

106(a)(5), requested the trial court to issue an order to show cause why the general partners should not be individually bound by the judgment against Wells Plaza.

At the conclusion of the hearing, the trial court orally ruled that C.R.C.P. 106(a)(5) was not applicable and denied plaintiff's motion for an order to show cause. On October 12, 1990, the trial court entered its written findings of fact and conclusions of law. That same day, FDIC filed a motion for reconsideration which was denied.

## I.

Wells Plaza initially contends that this court erred in denying its motion to dismiss this appeal and asks for reconsideration. According to Wells Plaza, FDIC's motion for reconsideration of the trial court's judgment was not timely, and therefore, this court is without jurisdiction to decide this appeal. We disagree.

C.R.C.P. 59 allows a party 15 days from the entry of judgment to file a motion for post-trial relief. C.R.C.P. 58(a) provides that the effective date of the entry of judgment is the "actual date of the signing of the written judgment."

Here, although the trial court orally ruled earlier, it signed the written order on October 12, 1990, and FDIC filed its motion for reconsideration that same day. Accordingly, FDIC's motion was timely. We also deny FDIC's request for attorney fees incurred as a result of re-addressing this issue.

## II.

The main contention on appeal is whether the trial court erred in refusing to issue an order pursuant to C.R.C.P. 106(a)(5) requiring the general partners of Wells Plaza to show cause why they should not be bound by FDIC's judgment. We conclude that the trial court did err.

C.R.C.P. 106(a)(5) was designed to provide relief previously available under the writ of *scire facias.* At common law, such writ served several purposes. In the context of C.R.C.P. 106, it called on defendants

to show cause why a then existing judgment against them should not be executed upon.

The writ of *scire facias* represented a new lawsuit, and if it was resolved in favor of the petitioner requesting the writ, the relief granted was simply that execution would issue on the existing judgment. R. Hardaway & S. Hyatt, 5 *Colorado Civil Rules Annotated* 501, et seq. (2d ed. 1985).

C.R.C.P. 106(a)(5) is more limited than the common law writ and provides for relief in the district court:

> When judgment is recovered against one or more of several persons jointly indebted upon an obligation, and it is desired to proceed *against the persons not originally served with the summons who did not appear in the action.* Such persons may be cited to show cause why they should not be bound by the judgment in the same manner as though they had been originally served with the summons, and in his answer any such person may set up any defense either to the original obligation or which may have arisen subsequent to judgment, except a discharge from the original liability by the statute of limitations. (emphasis added)

■ This case raises an issue of first impression in Colorado: Whether a court may issue an order under C.R.C.P. 106(a)(5) to partners not named and not served in an action against the partnership to show cause why they should not be bound by the judgment entered against the partnership.

There has been little case law interpreting C.R.C.P. 106(a)(5) and its predecessor rule. *See Womack v. Grandbush,* 134 Colo. 1, 298 P.2d 735 (1956) (order to show cause proper where partner was not named and not served because her co-partner had stated in an affidavit that he was the sole partner); *Sawyer v. Armstrong,* 23 Colo. 287, 47 P. 391 (1896) (order to show cause proper where a partner was named in the principal suit but not served).

Wells Plaza contends that a plaintiff such as FDIC must name and serve the partner in the original action against the partnership in order for a court to issue a show cause order to that partner. However, the plain language of C.R.C.P. 106(a)(5) does not require that the partner be named. To the contrary, it specifically allows a court to issue an order to "persons not originally served ... who did not appear in the action."

Also, in their treatise, Professors Hardaway and Hyatt state that the rule applies "only to a joint obligor *who was not served in an action on the obligation and who made no appearance."* 5 *Colorado Civil Rules Annotated, supra,* at 512 (emphasis added).

> While the general provisions of Rule 106(a) provide for relief by appropriate action under the practice prescribed by the Rules, which would require a summons and complaint in the usual form, sub-section (5) provides for a citation to show cause why such joint obligor should not be bound by the judgment *as though he had been originally served with a summons.* In permitting an answer to the citation to show cause in which any defense except the statute of limitations may be set up, the issues are made up in much the same way as they would be *if the proceedings had been started with a summons and complaint.*

Relief under this section of Rule 106 is available generally when it is discovered after trial or judgment that another person may be liable to pay the debt. 5 *Colorado Civil Rules Annotated, supra,* at 512 & 513 (emphasis added).

We therefore hold that C.R.C.P. 106(a)(5) permits a trial court to issue a show cause order to the partners even if plaintiff did not name them or serve them in the original action against the partnership. Thus, the trial court erred in refusing to issue the show cause order on that basis.

### III.

Wells Plaza also contends that a show cause order was not proper because § 13-50-105, C.R.S. (1987 Repl.Vol. 6A) provides that, in an action against a partnership, only the separate property of an individual partner "who is named as a party individu-

ally and over whom individually the court has acquired jurisdiction" may be bound by the judgment. Here, however, we only address the procedural question of whether a court may issue a show cause order under these circumstances. We do not address substantive arguments which may arise at the hearing on the order to show cause such as a partner's liability, if any, for the judgment against the partnership.

The order is reversed, and the cause is remanded with directions to the trial court to proceed in accordance with this opinion.

TURSI and JONES, JJ., concur.