**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 30, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JAMES KINGSBURY, Personal
Representative of the Estate of and Next of
Kin to Rachel Mary Kingsbury, Deceased,

     Plaintiff - Appellee,

v.

WESTLAKE MANAGEMENT
COMPANY, a Texas corporation,

     Defendant - Appellant,

and

QC PROPERTY HOLDINGS LLC;
QC NURSING LLC; RON LUSK,
an individual,

     Defendants.

No. 16-6087
(D.C. No. 5:14-CV-00468-M)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Plaintiff James Kingsbury, acting as the personal representative of his mother's estate, brought the underlying action against the Defendants in their capacities as partners of the limited partnership that owned the nursing home where Mr. Kingsbury's mother resided at the time of her death. The general partner appeals the judgment entered against it by the district court on the ground that the action is barred by the statute of limitations. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

# I

Rachel Mary Kingsbury died in residence at the Quail Creek Nursing Home in Oklahoma City (Nursing Home), which was owned by the Westlake Nursing Home Limited Partnership (the Partnership), an Oklahoma limited partnership. The Partnership was, in turn, owned by Westlake Management Company (Westlake), a Texas corporation, as its general partner and 1% owner, and Ron Lusk, a Texas resident, as its limited partner and 99% owner. Mr. Lusk is the president and 100% owner of Westlake.

Ms. Kingsbury choked to death when Quail Creek staff negligently fed her solid food in direct contravention of her dietary restrictions. James Kingsbury brought suit against the Partnership in Oklahoma state court for wrongful death. While that suit was pending, the Partnership sold the Nursing Home for approximately $5.8 million, the proceeds of which were deposited in Westlake's

---

[1] Westlake's appeal of a related action involving a different plaintiff is Appeal No. 16-6011, which was argued before this court on November 16, 2016.

Texas bank account and then disbursed between Westlake and Mr. Lusk in accordance with their respective partnership shares: 99% to Mr. Lusk; 1% to Westlake.[2] A jury later rendered a verdict in favor of Mr. Kingsbury and awarded him $355,484.89 (the Kingsbury Judgment).

The Kingsbury Judgment remains unpaid, and due to the sale of the Nursing Home and distribution of the proceeds, the Partnership is unable to satisfy it. As a result, Mr. Kingsbury filed this action in which he seeks to satisfy the Kingsbury Judgment against Westlake as the general partner and Mr. Lusk as the limited partner of the Partnership. In the district court, Westlake moved to dismiss the complaint on the ground that the statute of limitations had run. In Westlake's view of Oklahoma law, Mr. Kingsbury should have named the partners in his original negligence suit against the Partnership to preserve his ability to satisfy the Kingsbury Judgment against them. Because the negligence statute-of-limitations period had lapsed by the time Mr. Kingsbury obtained his state-court judgment against the Partnership, Westlake argues this action is barred. The district court rejected that argument.

Noting that Mr. Kingsbury had made no allegations that the negligence of Westlake or Mr. Lusk caused Ms. Kingsbury's death, the district court concluded the present action was for collection of debt and that "a partner's liability does not arise until the partnership's obligation has been determined." Aplt. App. at 124. The court

---

[2] In a related action, Mr. Kingsbury and plaintiffs representing the estate of another Nursing Home resident brought a fraudulent transfer action against Westlake and Mr. Lusk. In Appeal No. 16-6055 also issued today, we affirm the judgment entered against Mr. Lusk.

thus concluded the action had been filed within the five year limitations period for collection of debt and denied Westlake's motion to dismiss. The parties then stipulated to entry of judgment on the pleadings, subject to Westlake's express reservation of its statute-of-limitations defense. This appeal followed.

## II

Westlake argues on appeal, as it did in the district court, that Mr. Kingsbury should have named the partners in his original suit against the Partnership, and that because he did not, he is time-barred from doing so now. We review de novo "a district court's ruling regarding the applicability of a statute of limitations." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 967 (10th Cir. 1994). "Because the district court's jurisdiction was based on diversity of citizenship, Oklahoma substantive law governs the statute of limitations question." *Brady v. UBS Fin. Servs., Inc.*, 538 F.3d 1319, 1323 (10th Cir. 2008). "Generally, a statute of limitations begins to run when a cause of action accrues, and a cause of action accrues at the time when a plaintiff first could have maintained his action to a successful conclusion." *Okla. Brick Corp. v. McCall*, 497 P.2d 215, 217 (Okla. 1972).

## A

Under Oklahoma law, "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by

4

law." 54 Okla. Stat. § 1-306.[3] Westlake does not contend the obligation here falls into any exception to Section 1-306. Consequently, Westlake and Mr. Lusk are jointly and severally liable for the Kingsbury Judgment.

But Oklahoma law also provides in Section 1-307 that:

(b) An action may be brought against the partnership and, to the extent not inconsistent with [the exceptions in Section 1-306], any or all of the partners in the same action or in separate actions.

(c) A judgment against a partnership is not by itself a judgment against a partner. A judgment against a partnership may not be satisfied from a partner's assets unless there is also a judgment against the partner.

(d) A judgment creditor of a partner may not levy execution against the assets of the partner to satisfy a judgment based on a claim against the partnership unless the partner is personally liable for the claim under [Section 1-306] and . . .

> (1) a judgment based on the same claim has been obtained against the partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part [or] . . .

> (4) a court grants permission to the judgment creditor to levy execution against the assets of a partner based on a finding that partnership assets subject to execution are clearly insufficient to satisfy the judgment.

54 Okla. Stat. § 1-307(b)–(d). Oklahoma's statute of limitations is five years for suits on a debt and two years for personal injury actions. 12 Okla. Stat. § 95(A)(3) & (12).

As an initial matter, Oklahoma courts have only passingly addressed the foregoing statutes. And the three questions before us appear to be of first impression

---

[3] The only exceptions to this rule relate to partner admission dates and limited liability partnerships, neither of which is relevant here.

in this circuit and in Oklahoma: first, which limitations period would the Oklahoma courts apply to this action; second, when would the Oklahoma courts deem that period to have commenced; and third, does Oklahoma partnership law compel a contrary conclusion?

With respect to the first question, we agree with the district court that the substance of Mr. Kingsbury's complaint is that of a judgment creditor seeking to satisfy a debt. There are no "allegations of individual wrongdoing," nor does the complaint "identify the individual conduct of either [partner] as a basis for personal liability." *See Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*, 602 F.3d 610, 617 (5th Cir. 2010) (construing the substantially similar Texas Revised Partnership Act (TRPA)).[4] Instead, it merely "seeks to impose liability on [the partners] for partnership debt by operation" of Oklahoma statute. *See id.* We are therefore confident the Oklahoma courts would apply the five-year statute of limitations governing a suit for debt. *See* 12 Okla. Stat. § 95(A)(12).

Second, the Oklahoma statutes make clear that a "judgment against a partnership is not by itself a judgment against a partner." 54 Okla. Stat. § 1-307(c). Accordingly, "[b]ecause a creditor's rights against a partner do not arise when the partnership incurs an obligation," we conclude that Oklahoma courts would "define accrual as occurring when those rights arise." *Am. Star Energy & Minerals Corp. v.*

---

[4] The TRPA and Revised Uniform Partnership Act are substantially similar. *Compare* Tex. Bus. Orgs. Code §§ 152.304–06, *with* 54 Okla. Stat. §§ 1-306–07 (using almost identical language). Thus, we think Oklahoma courts would find authority applying the TRPA more persuasive than the other authorities relied upon by Westlake and Lusk.

*Stowers*, 457 S.W.3d 427, 432 (Tex. 2015) (construing the substantially similar TRPA). Armed with these conclusions, we easily determine that Mr. Kingsbury's claim against the partners did not accrue until—at the earliest—the state court entered the Kingsbury Judgment. Westlake insists, however, that both the Oklahoma statutes and non-Oklahoma case law compel a different conclusion. We are not convinced.

To begin, Westlake contends that Section 1-307(b) anticipates that a party who seeks to hold the partners liable for the partnership's negligence will name those partners in the negligence action itself. But this argument ignores the permissive nature of Section 1-307(b), which affords would-be plaintiffs the option of suing "in the same action or in separate actions." 54 Okla. Stat. § 1-307(b). And, "considering its enforcement scheme, this rule suggests the Legislature considers the collection action to be separate from the underlying litigation." *Am. Star*, 457 S.W.3d at 432. Here, Mr. Kingsbury acted consistently with Section 1-307(b) by first obtaining the Kingsbury Judgment against the Partnership and then bringing a separate action against the partners to collect when that judgment could not be satisfied from the Partnership's assets. Interpreting partnership laws almost identical to Oklahoma's, the Texas Supreme Court explained, "[i]n allowing separate suits, the Legislature must have contemplated that at least some subsequent actions against partners would be brought outside of the original limitations period." *Id.* Here, we agree with the district court that the action against the partners to collect on the Kingsbury Judgment

7

did not have to be brought within the statute of limitations governing the original negligence action.

Next, Westlake argues that the "based on the same claim" language in Section 1-307(d)(1) prevents Mr. Kingsbury from seeking payment from the partners. *See* 54 Okla. Stat. § 1-307(d)(1) (providing that a judgment creditor of a partner may not execute against the assets of a partner to satisfy a judgment based on a claim against the partnership unless "(1) a judgment based on the same claim has been obtained against the partnership and a writ of execution on the judgment has been returned unsatisfied in whole or in part . . . ."). But we find nothing in that provision to prevent Mr. Kingsbury from bringing the present action. Section 1-307(d) merely mandates that before the creditor attempts to satisfy an obligation of the partnership against the assets of the partners, he must first obtain a judgment against the partnership "*based on* the same claim," and unsuccessfully attempt to satisfy that judgment against partnership assets. By its plain language, Section 1-307(d)(1) does not dictate that the action against the partners be for *the exact same claim*; all that is required is that it be "*based on* the same claim." *See* 54 Okla. Stat. § 1-307(d)(1) (emphasis added). We agree with the district court that the action against Westlake to collect the Kingsbury Judgment is "based on" the negligence claim against the Partnership which resulted in that judgment.

In summary, Section 1-306 leaves no doubt that Westlake is liable for the debts of the Partnership and by this action, Mr. Kingsbury seeks a judgment against Westlake for that joint and several obligation. *See id.* § 1-306. With that judgment

8

and proof that a writ of execution on the Kingsbury Judgment against the Partnership "has been returned unsatisfied in whole or in part," Mr. Kingsbury will be entitled to collect against Westlake's assets. *See id*. § 1-307(d); *State ex rel. Hampton v. Oakes*, 281 P.2d 749, 753 (Okla. 1955) ("[A]ll the various provisions of legislative enactments upon the particular subject should be construed together and given effect as a whole.").

## B

The Oklahoma courts are also unlikely to be persuaded by Westlake's citations to what it calls the "majority rule." First, Westlake's chief case from the Ninth Circuit is not analogous here. In *Valley National Bank of Arizona v. A.E. Rouse & Co.*, 121 F.3d 1332 (9th Cir. 1997), the court noted that under Arizona law, service of a complaint on one partner "shall authorize a judgment against the partnership and *against the partner actually served.*" *Id*. at 1336 (emphasis added). Based on that statute, the court held that, "in an action against a partnership, judgment is not authorized against unserved partners." *Id*. This provision, in addition to being dissimilar to the relevant Oklahoma statutes, does not speak to the issue of when the statute of limitations to collect a partnership debt against a partner commences. And to the extent it requires service on a partner against whom a judgment is sought, it is no more restrictive than the Oklahoma statute. As discussed, Section 1-307(d) requires a judgment against the partner before a partnership debt can be satisfied against the partner's assets, which, in turn, would require valid service on that partner in the debt-collection action. Accordingly, nothing in *Valley National* gives us cause

9

to question our conclusion that the Oklahoma courts would hold that the limitations period for a debt-collection action against a partner for a partnership debt does not commence until judgment is obtained against the partnership.

*Sunseri v. Proctor*, 487 F. Supp. 2d 905 (E.D. Mich. 2007), *aff'd* 286 F. App'x 930 (6th Cir. 2008) (unpublished), is likewise inapposite. The district court there did not interpret any state-law provision similar to the Oklahoma statutes at issue in this case. And it distinguished the result there from a New York decision holding to the contrary that the statute began to run only after judgment was entered against the partnership, stating: "In contrast to this case, however, *Whitley* involved a limited partnership, which unlike this case, required the plaintiffs to prove that the limited partnership's assets were exhausted before they could proceed against the limited partners." *Id.* at 908 (citing *Whitley v. Klauber*, 417 N.Y.S.2d 959 (N.Y. App. Div. 1979)). Here, as in *Whitley*, Oklahoma law requires an unsuccessful attempt to satisfy the judgment against the Partnership before a judgment against the partners for a claim against the Partnership can be satisfied against the partners' assets. 54 Okla. Stat. § 1-307(d).

Westlake's remaining two state-court citations are also inapposite. In *Gutrich v. Cogswell & Wehrle*, 961 P.2d 1115 (Colo. 1998) (en banc), the Colorado Supreme Court interpreted an exception to a statute that excludes the separate property of a partner not personally served from the reach of a judgment entered against the partnership in a suit to enforce a substantive right. *Id*. at 1118–19. The court in *Gutrich* merely interpreted a state rule of civil procedure allowing execution of a

10

judgment against the partnership against the property of an unserved partner when the plaintiff was unable to ascertain partner identities, could not effectuate personal jurisdiction, or otherwise encountered an impediment to naming and serving the partners. *Id*. at 1119–20. Not only is the decision unique to the laws of Colorado, it supports collection of the Kingsbury Judgment against Westlake. As the Colorado court in *Gutrich* explained, the rule "is an appropriate mechanism in cases where the plaintiff, usually due to the misbehavior of the person against whom such relief is directed, has been unable to collect an obligation through normal process." *Id*. at 1119. Here, Westlake and Mr. Lusk sold the Partnership's only asset and disbursed the proceeds while the Kingsbury estate's wrongful death action was pending. Such "misbehavior" might place the partner's assets here squarely within the exception to Colorado's rule. And significantly, the plaintiff in *Gutrich* did not challenge the district court's denial of the motion to add the individual partners as parties to the action after the statute had run. *Id.* at 1119 n.2.

Finally, in *Hoelting Enterprises v. Nelson*, 929 P.2d 183 (Kan. App. 1996), a the partnership defaulted on a non-recourse mortgage secured by an apartment complex and the rents and profits accrued therefrom. After foreclosing on the real property, the plaintiff sued the general partners of the partnership to recover the rents and profits accumulated between the time of default and the foreclosure. The district court dismissed the action based on the three-year statute of limitations applicable to actions "based upon liability created by a statute." *Id.* at 231. The Kansas Court of Appeals reversed, holding that the action was properly characterized as an action to

11

enforce the written contract, which pledged rents and profits as security for the mortgage. *Id.* at 187. As such, the action was timely because it was brought within the five-year contract statute of limitations. *Id*. at 187. Unlike the present action, the suit in *Hoelting* was not to collect on a judgment entered against the partnership; it was to recover the specific security pledged as collateral for the mortgage loan. Accordingly, the point at which the claim accrued here is fundamentally different than in *Hoelting*; it is the time the obligation arose by entry of judgment against the Partnership.

## III

We conclude that Mr. Kingsbury's suit as a judgment creditor is timely under the appropriate five-year limitations period because the claim did not accrue until the state-court judgment against the Partnership was entered. We therefore AFFIRM the judgment of the district court.

Entered for the Court

Carolyn B. McHugh
Circuit Judge